**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                :

PRISM TECHNOLOGIES LLC,        :   Civil Action No. 8:12-cv-00123

              :

         Plaintiff,       :   Judge Lyle E. Strom

              :

   v.            :

              :

SPRINT SPECTRUM L.P.        :

D/B/A/ SPRINT PCS,         :

              :

         Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**PLAINTIFF PRISM TECHNOLOGIES LLC'S OPPOSITION**
**TO SPRINT'S MOTION TO DISMISS UNDER RULE 12(b)(6) AND**
**<u>PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)</u>**

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................... ii

I.      Preliminary Statement............................................................................................ 1

II.     Legal Standard ....................................................................................................... 3

        A.      12(b)(6) Motion to Dismiss Contributory Infringement Claims............................ 3

        B.      12(c) Judgment on the Pleadings to Limit Damages ............................................. 4

III.    Argument ............................................................................................................... 5

        A.      Prism Adequately Pled Contributory Infringement ............................................. 5

                1.      Prism's Second Amended Complaint Provides Detailed Factual
                        Allegations as to Sprint's Contributory Infringement by Sprint's Sale of
                        Data Enabled Wireless Devices ............................................................ 6

                2.      Prism's Second Amended Complaint Adequately Alleges That the Data
                        Enabled Wireless Devices Sold by Sprint Have No Substantial Non-
                        Infringing Use ...................................................................................... 10

                        (a) Prism Alleges That it is Impossible to Use Sprint Sold Data Enabled
                        Wireless Devices in a Non-Infringing Manner ....................................... 11

                        (b) Sprint Cannot Escape Contributory Infringement by Bundling
                        Infringing Products With Non-Infringing Components............................ 12

                        (c) Sprint's Motion is an Impermissible Motion
                        For Summary Judgment....................................................................... 14

                3.      Prism Adequately Alleges that Data Enabled Wireless Devices Are a
                        Material Part of the Claimed Inventions ............................................... 14

        B.      Sprint's Motion For Partial Judgment on the Pleadings is Baseless..................... 16

IV.     Conclusion ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................4, 16

*Ashley County, Arkansas v. Pfizer, Inc.*,
    552 F.3d 659 (8th Cir. 2009) .................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................4

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) .................................................................................4

*CIVIX-DDI, L.L.C. v. Cellco Partnership*,
    387 F. Supp. 2d 869 (N.D. Ill. 2005) ...................................................................17

*Cybiotronics, Ltd. v. Golden Source Electonics., Ltd.*,
    130 F. Supp. 2d 1152 (C.D. Cal. 2001) ...............................................................17

*Driessen v. Sony Music Entertainment*,
    No. 2:09-cv-140, 2012 U.S. Dist. LEXIS 152822 (D. Utah Oct. 23, 2012) ............11

*Fujitsu Ltd. v. Netgear*,
    620 F.3d 1321 (Fed. Cir. 2010) .............................................................................4

*Halton Co. v. Streivor, Inc.*,
    No. 10-cv-655, 2010 WL 2088203 (N.D. Cal. May 21, 2010) ........................15 n.6

*McAuley v. Federal Insurance Co.*,
    500 F.3d 784 (8th Cir. 2007) ..........................................................................4, 14

*Meehan v. United Consumers Club Franchising Corp.*,
    312 F.3d 909 (8th Cir. 2002) .................................................................................4

*Noble Systems Corp. v. Alorica Center, LLC*,
    543 F.3d 978 (8th Cir. 2008) .................................................................................5

*Plan Pros, Inc. v. Zych*,
    No. 08-cv-125, 2009 U.S. Dist. LEXIS 28780 (D. Neb. Mar. 31, 2009) ...............15

*Radiation Stabilization Solutions LLC v. Accuray Inc.*,
    No. 11-cv-7700, 2012 WL 3621256 (N.D. Ill. Aug. 21, 2012) ................12 n.5, 15 n.6

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2009) .....................................................................10, 12

*Stalley v. Catholic Health Initiatives,*
    509 F.3d 517 (8th Cir. 2007) ...............................................................................15

*VoiceFill, LLC v. West Interactive Corp.,*
    No. 8:11-cv-421, 2012 WL 1949378 (D. Neb. May 29, 2012) ................................4

**STATUTES**

35 U.S.C. § 271(c) ...................................................................................................4, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)............................................................................... *passim*

Fed. R. Civ. P 12(c) ..................................................................................... *passim*

Plaintiff Prism Technologies LLC ("Prism") respectfully opposes Sprint Spectrum L.P.'s ("Sprint") Motion to Dismiss Prism Technologies LLC's Second Amended Complaint pursuant to Rule 12(b)(6) and Partial Motion for Judgment on the Pleadings Pursuant to Rule 12(c) ("Motion").[1]

## I.    Preliminary Statement

Sprint's Motion fails as a matter of law because it asks the Court to ignore the numerous factual allegations in Prism's Second Amended Complaint—which are deemed true for purposes of this Motion—and, instead, rely on Sprint's unsupported and erroneous assertions. Prism's detailed factual allegations more than satisfy the threshold pleading requirements. Tellingly, in response to Prism's First Amended Complaint, identical to the Second Amended Complaint in pertinent part, Sprint answered Prism's allegations, confirming that Prism's allegations were, and remain sufficient. Moreover, the defendants in the related cases elected to answer similarly detailed allegations, rather than file such a motion.

Sprint seeks dismissal of Counts II, V and VII on the grounds that Prism's contributory infringement claims are purportedly inadequately pled. To the contrary, Prism's Second Amended Complaint alleges in detail that Sprint is liable for contributory infringement based on Sprint's sales (and offers for sale) of Sprint Data Enabled Wireless Devices that are used by subscribers to Sprint's Data Services.[2] In accordance with the requirements to plead contributory infringement, Prism alleges that the Data Enabled Wireless Devices sold by Sprint

---

[1] Citations to "SAC ¶ __" refer to Prism's Second Amended Complaint, Docket Entry No. 84. "Exhibit __" refers to exhibits A-H attached to Prism's Second Amended Complaint, Docket Entry Nos. 84.1-84.8, respectively. "Br. __" refers to Sprint's moving brief, Docket Entry No. 90.

[2] "Data Enabled Wireless Devices" are defined in the Second Amended Complaint as certain wireless devices that can access Sprint's Data Services. SAC ¶ 33.

cannot be used in a substantially non-infringing manner and are a "material part" of the claimed invention.

Sprint wrongly argues that it cannot be liable for contributory infringement because Data Enabled Wireless Devices sold by Sprint can be used to make phone calls and send text messages, which Sprint argues are substantial non-infringing uses. This arguments is misplaced as the Second Amended Complaint specifically alleges that merely turning on the accused Data Enabled Wireless Devices causes them to automatically attempt to access Sprint's Data Services, necessarily infringing the claimed systems and methods. Sprint cannot escape contributory infringement by arguing that its infringing components (i.e., hardware and software used exclusively to access Sprint's Data Services as alleged in the Second Amended Complaint) are bundled with non-infringing components (e.g., the ability to make a phone call or send a text message).

Sprint's motion to dismiss should also be denied because it is improperly predicated on information beyond the pleadings. For example, Sprint's sole substantial non-infringing use is that its "phones can be used for . . . making traditional telephone calls." Br. p. 2; *see also* Br. pp. 4-7. There is no basis in the Second Amended Complaint or in the attached Sprint Customer Agreement (Exhibit H) to support Sprint's factual argument that its phones have non-infringing functionality (as Prism alleges that the devices automatically infringe when turned on). Whether the accused Data Enabled Wireless Devices have substantial non-infringing uses is a highly factual inquiry that can only properly be resolved after discovery—not on a motion to dismiss, where Prism's detailed and plausible allegations of automatic infringement are deemed true.

Further, Prism's Second Amended Complaint provides detailed allegations that support the necessary inference that the Data Enabled Devices are a "material part" of the claimed invention. The Second Amended Complaint explains in detail how Sprint implements the accused systems and methods, and how the accused Data Enabled Wireless Devices are central to these systems and methods. Thus, Sprint's Motion should be denied because Prism's detailed factual allegations more than satisfy the threshold legal requirements for pleading contributory infringement.

Sprint's motion for partial judgment on the pleadings related to Counts II, III, V, VI and VIII should also be denied. The Second Amended Complaint adequately alleges Sprint's knowledge of the asserted patents in support of the indirect infringement claims. Prism alleges that Sprint indirectly infringed the asserted patents "at least as early as" the respective filings. Sprint does not dispute that this is sufficient to support claims of indirect infringement. Sprint's attempt to limit the damages period on factual grounds before discovery is wholly unsupported by any relevant legal authority granting similar relief on the same or similar procedural posture.[3]

For these reasons, Sprint's Motion entirely lacks merit and should be denied. However, should the Court be inclined to grant any portion of the Motion, Prism respectfully requests that the Court grant it leave to amend its Second Amended Complaint.

## II.    Legal Standard

### A.    12(b)(6) Motion to Dismiss Contributory Infringement Claims

A party asserting contributory infringement must plead that (1) the alleged infringer sells or offers to sell, a material or apparatus for use in practicing a patented process,

---

[3] Tellingly, Sprint, unlike AT&T, is unwilling to represent in a stipulation that it had no knowledge of the asserted patents prior to the filing of the complaints in order to resolve the latter half of the instant Motion. *See Prism v. AT&T Mobility LLC*, Civ. Act. No. 8:12-cv-00122-LES-TDT, Docket Entry No. 101(D. Neb. Apr. 1, 2013).

and (2) that the "material or apparatus" is material to practicing the invention, (3) has no substantial non-infringing uses, and (4) is known by the party "to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c).

For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) . To survive a motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As this Court recently explained, "it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests, and allow the court to draw the reasonable inference that the plaintiff is entitled to relief." *VoiceFill, LLC v. West Interactive Corp.*, No. 8:11-cv-421, 2012 WL 1949378, at *3 (D. Neb. May 29, 2012) (Gerrard, J.) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009)).

"[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (internal quotations omitted). However, a court deciding a motion to dismiss may not consider facts outside of the pleadings and not otherwise supported by materials attached to the complaint. *See McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 788 (8th Cir. 2007) (reversing grant of motion to dismiss that was improperly based on information outside the pleadings).

**B.     12(c) Judgment on the Pleadings to Limit Damages**

To state a claim for indirect infringement a patent owner must allege that the accused infringer had knowledge of the asserted patent. *See Fujitsu Ltd. v. Netgear*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). "Judgment on the pleadings is appropriate only when there is no

dispute as to any material facts and the moving party is entitled to judgment as a matter of law, the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quotation omitted). In considering a motion for judgment on the pleadings, the Court must "accept as true the non-moving party's factual allegations and grant the non-moving party all reasonable inferences from the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 981 (8th Cir. 2008) (citing *MM&S Fin., Inc. v. NASD, Inc.*, 364 F.3d 908, 909 (8th Cir. 2004)).

As explained further below, Prism's Complaint satisfies the pleading requirements of the Federal Rules, this District and the Federal Circuit. Accordingly, Defendants' motion to dismiss should be denied.

## III. <u>Argument</u>

### A. **Prism Adequately Pled Contributory Infringement**

Sprint's Motion should be denied because Prism's Second Amended Complaint more than adequately alleges contributory infringement. Sprint argues that Prism's contributory infringement claims are deficient because: (1) Data Enabled Wireless Devices sold by Sprint have substantial non-infringing uses; and (2) the Data Enabled Wireless Devices are not a "material part" of the accused systems and methods. Br. pp. 2-7. Sprint's arguments are fundamentally flawed because the Second Amended Complaint specifically alleges that Sprint sells Data Enabled Wireless Devices that, however used, infringe the asserted patents as they automatically attempt to access Sprint's Data Network when turned on. Prism's Second Amended Complaint also provides detailed factual allegations explaining the "material part" the Data Enabled Wireless Devices play in the accused systems and methods. Notwithstanding Prism's properly pled allegations, Sprint's Motion is premised on disputed facts that cannot be resolved on a motion to dismiss.

1.  **Prism's Second Amended Complaint Provides Detailed Factual Allegations as to Sprint's Contributory Infringement by Sprint's Sale of Data Enabled Wireless Devices**

The Second Amended Complaint provides detailed factual allegations supporting Prism's contributory infringement claim. More specifically, Sprint's systems and methods for controlling access to its networks form the basis of the direct infringement claim. SAC ¶¶ 12-42, 59-66, 83-89. The Second Amended Complaint alleges that Sprint sells data Enabled Wireless Devices which are used to access its network. SAC ¶¶ 27-34, 39, 45-46, 63, 68-69, 86, 91-92. The Second Amended Complaint further alleges, and the attached Customer Agreement confirms, that Sprint restricts access to its network to specific Data Enabled Wireless Devices sold by Sprint, and that such devices are designed only to work with Sprint's Wireless Network and Data Services. SAC ¶¶ 27, 31, 32, 39 , 44-46, 63, 68-70, 86, 91-93; Exhibit H. These devices are programmed to automatically attempt to access Sprint's Data Services via the accused systems and methods when the devices are turned on. SAC ¶¶ 45, 69, 92. On the basis of these factual allegations, Prism alleges contributory infringement for Sprint's sale of Data Enabled Wireless Devices. SAC ¶¶ 43-47, 67-71, 90-94. As demonstrated below, these conclusion are fully supported by the factual allegations in the Second Amended Complaint.

Sprint's implementation of authentication systems and methods for controlling access to its networks forms the basis of Prism's direct infringement claims:

- "Sprint implements authentication systems and methods for controlling and protecting unauthorized access to its wireless networks." SAC ¶ 14.

- "Sprint's authentication systems and methods are used every time a computer or wireless device accesses Sprint's wireless network and data services." SAC ¶ 15.

- "On information and belief, Sprint's systems and methods for controlling and protecting unauthorized access to its wireless networks and data services operate in the same manner as the systems and methods for controlling access that Prism pioneered and patented in the '288 patent, '345 patent, and '155 patent." SAC ¶ 16.

- "Sprint uses its Authentication Systems when a device accesses the Sprint Wireless Network and Data Services." SAC ¶ 28.

- "Sprint authorizes customers' devices to access Sprint's Wireless Networks and Data Services if customers purchase and/or subscribe to Sprint's Data Service plans." SAC ¶ 21.

The Second Amended Complaint provides detailed factual allegations explaining

that Sprint sells Data Enabled Wireless Devices:

- "The Wireless Networks and Data Services operated, offered, sold, and marketed by Sprint are accessed by Sprint's customers using a wide variety of wireless devices including smartphones, mobile broadband devices such as aircards and hotspots, and embedded tablets and laptops manufactured by various suppliers for use with Sprint's Data Services." SAC ¶ 30.

- "At this time Sprint offers, sells and markets wireless devices capable of accessing Sprint's Data Services. These wireless devices include at least the following examples: Samsung Transform Ultra, Galaxy S II, Galaxy S III, Galaxy Nexus . . . Apple iPhone 4 and iPhone 4S . . . Briol Sierra Wireless 4G LTE Tri-Fi Hotspot, Sierra Wireless Overdrive Pro 3G/4G Mobile Hotspot, Sprint 3G/4G USB Modem 250U, Sprint 3G/4G Plug-in-Connect USB, MiFi 3G/4G Mobile Hotspot, Express Mobile Hotspot . . . (collectively "Data Enabled Wireless Devices")." SAC ¶ 33.

The Second Amended Complaint further alleges that Sprint sells Data Enabled

Wireless Devices with Sprint Data Plans:

- "On information and belief, when Sprint sells Data Enabled Wireless Devices to customers, Sprint also sells a Data Plan that allows his or her device to access Sprint's Wireless Network and Data Services." SAC ¶¶ 44, 68, 91.

- "On information and belief, Sprint requires all Data Plan subscribers to enter into an agreement (of varying term/length) with Sprint in which customers must comply with Sprint's terms of use in order to access Sprint's Wireless Network and Data Services. An exemplary copy of such an Agreement is attached as Exhibit H." SAC ¶ 22.

- "On information and belief, if customers choose not to subscribe to Sprint's Data Plans, Sprint does not authorize the customers' wireless device(s) to access, at least a portion of, Sprint Wireless Networks and Data Services. SAC ¶ 29.

The Second Amended Complaint also provides detailed factual allegations

explaining how Sprint restricts access to its network to specific Data Enabled Wireless Devices

sold by Sprint, and that such devices are designed only to work with Sprint's Wireless Network

and Data Services:

- "On information and belief, Sprint's Authentication Systems requires that any wireless devices used to access Sprint's Data Services include an associated hardware key/access key and digital identification (or other form of identity data) that may be associated with such wireless device." SAC ¶ 27.

- "On information and belief, Sprint requires that any wireless devices used to access Sprint's Data Services include an associated hardware key/access key and digital identification that may be associated with such wireless device necessary to work with Sprint's Authentication System." SAC ¶ 32.

- "On information and belief, Sprint, as identified in its Customer Agreement, controls at least portions of the hardware, software and operation of customers' wireless devices to ensure each wireless device can access Sprint's Wireless Network and Data Services by using the systems and methods claimed in the '288 patent. For example, Sprint's Agreement with its customers states 'Our services will only work with our phones . . . .' (Exhibit H). Sprint further states in its Agreement with customers:

  > Your device is designed to be activated on our networks and in other coverage areas that [Sprint] may make available to you. As programmed, it will not accept wireless service from another carrier. Except for any legal right you may have to port/transfer your phone number to another carrier, you have no—and cannot gain any (for example, through publication, use, etc.)—proprietary, ownership, or other rights to any phone number, identification number, e-mail address, or other identifier that we assign to you, your Device, or your account. We'll notify you if we decide to change or reassign them. Your CDMA Sprint PCS phone has a software programming lock that protects certain of the handset's operating parameters against unauthorized reprogramming. If you wish to obtain the software program lock code for your CDMA Sprint PCS phone, please visit Sprint.com or call 1-888-211-4727 for information and eligibility requirements."

  SAC ¶ 31.

- "Further, on information and belief, through its Customer Agreements, Sprint requires that all customers subscribing to a Data Plan use a Data Enabled Wireless Device that works with Sprint's Wireless Network and Data Services. Failure to

comply with a Customer Agreement may (at Sprint's discretion) result in termination of services. For example, as stated in the attached Agreement (Exhibit H):

> To ensure the activities of some users do not impair the ability of our customers to have access to reliable services provided at reasonable costs, you may not use our services in a manner that is unlawful, infringes on intellectual property rights, or harms or unduly interferes with the use of Sprint's network or systems. Sprint reserves the right, without notice or limitation, to limit data throughput speeds or quantities or to deny, terminate, end, modify, disconnect, or suspend service if an individual engages in any of the prohibited voice or data uses detailed below or if Sprint, in its sole discretion, determines action is necessary to protect its wireless networks from harm or degradation."

SAC ¶ 39.

The Second Amended Complaint makes the specific factual allegation that the accused Sprint Data Enabled Wireless Devices includes software and hardware that cause the device to automatically attempt to access Sprint's Data Services when the device is turned on, thereby implementing the accused systems and methods that Sprint employs to control access to its networks:

- "On information and belief, the Data Enabled Wireless Devices sold by Sprint necessarily include software and hardware that allows the device to use Sprint's authentication systems and methods controlling access to Sprint's Wireless Network and Data Services. On information and belief, a Data Enabled Wireless Device includes software controlled by Sprint to ensure that the Data Enabled Wireless Device attempts to access Sprint's Wireless Network and Data Services when the Data Enabled Wireless Device is powered-on." SAC ¶¶ 45, 69, 92.

Based on these *factual* allegations, the Second Amended Complaint alleges contributory infringement by Sprint:

- "On information and belief, these Data Enabled Wireless Devices are specifically designed to work with Sprint's Wireless Network, Data Services and Authentication Systems and have no substantial non-infringing use as sold and authorized by Sprint." SAC ¶¶ 46, 70, 93.

- "Sprint has been and now is indirectly infringing the [patents-in-suit] (by contributory infringement) in the State of Nebraska, in this judicial district, and elsewhere in the

United States, by making, using, selling and offering to sell Data Enabled Wireless Devices that use and practice the systems and methods claimed in the [patents-in-suit]." SAC ¶¶ 47, 71, 94.

> **2.** **Prism's Second Amended Complaint Adequately Alleges That the Data Enabled Wireless Devices Sold by Sprint Have No Substantial Non-Infringing Use**

The Second Amended Complaint alleges that the accused Data Enabled Wireless Devices sold by Sprint do not have any substantial non-infringing uses. *See* Section III.A.1. Sprint wrongly argues that because the Data Enabled Wireless Devices can make phone calls and send text messages, these devices have a substantial non-infringing use. Sprint's argument not only raises a factual issue beyond the scope of the Second Amended Complaint—warranting denial of the motion to dismiss—it also ignores key factual allegations from the Second Amended Complaint that must be accepted as true for the purposes of the Motion.[4]

As alleged in the Second Amended Complaint and as set forth below, the Data Enabled Wireless Devices sold by Sprint infringe whenever they are turned on because they are programmed to automatically attempt to access Sprint's Data Services. That these devices can then be used to text or make voice calls is of no moment. Sprint cannot escape contributory infringement merely by bundling these infringing components with purportedly non-infringing uses (i.e., providing them with non-infringing functionality that can only be accessed by infringing when the phone is turned on). *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2009). Sprint cannot substitute the facts alleged in the Second Amended Complaint with its own unsupported assertions on a motion to dismiss.

---

[4] Indeed, the sole non-infringing use argued by Sprint—the ability to make phone calls and send text messages—cannot even be performed by certain accused devices, such as mobile hotspots and aircards. *See* SAC ¶¶ 30, 33. For this reason alone, Sprint's argument fails.

### (a) Prism Alleges That it is Impossible to Use Sprint Sold Data Enabled Wireless Devices in a Non-Infringing Manner

The Second Amended Complaint alleges that it is impossible to turn on the accused Data Enabled Wireless Devices without infringing:

- "Data Enabled Wireless Device include[s] software controlled by Sprint to ensure that the Data Enabled Wireless Device attempts to access Sprint's Wireless Network and **Data Services when the Data Enabled Wireless Device is powered-on**." SAC ¶¶ 45, 69, 92 (emphasis added).

- "Sprint's authentication systems and methods are used every time a computer or wireless device accesses Sprint's wireless network and data services." SAC ¶ 15.

- Importantly, Sprint's Customer Agreement confirms that Data Enabled Wireless Devices sold by Sprint will only work with Sprint's Data Services. Exhibit H ("Our services will only work with our phones . . .").

The Second Amended Complaint also alleges that even a Data Enabled Wireless Device not subscribed to a data plan (e.g., belonging to a user who only uses the device to makes telephone calls), will still attempt to access the accused Sprint Authentication Systems and Data Services, and thereby infringe: "[A] Data Enabled Wireless Device that is not associated with a customer subscribing to one of Sprint's Data Plans will not be authorized by Sprint to access at least a portion of Sprint's Wireless Network and Data Services." SAC ¶ 34. The Second Amended Complaint provides other express factual allegations to the same effect—that there are no substantial non-infringing uses for the accused Data Enabled Wireless Devices. *See e.g.*, SAC ¶¶ 31, 39; *see also* Section III.A.1.

Therefore, Sprint's arguments necessarily fail because Prism alleges that there are no substantial non-infringing uses for the accused Data Enabled Wireless Devices. [5]

---

[5] The cases cited by Sprint provide no support for its argument that Prism's allegations are deficient. The Second Amended Complaint provides detailed factual allegations, as set forth above. In contrast, the complaints found deficient in cases relied upon by Sprint had few, if any, relevant factual allegations. *See Driessen v. Sony Music Entm't*, No. 2:09-cv-140, 2012 U.S. Dist. LEXIS 152822, at *28-29 (D. Utah Oct. 23, 2012) ("[T]he Third Complaint merely

**(b)** **Sprint Cannot Escape Contributory Infringement by Bundling Infringing Products With Non-Infringing Components**

Sprint cannot escape infringement by bundling infringing components (e.g., software and hardware adapted to access Sprint's wireless networks and Data Services) with non-infringing components (e.g., additional functionality such as voice and text). A defendant cannot escape liability as a contributory infringer merely by embedding that same component in a larger product with some additional, separable feature before importing and selling it. *Ricoh*, 550 F.3d at 1337 (Fed. Cir. 2009). In *Ricoh*, the defendant sold disk drives that, as a whole, had substantial noninfringing uses, but that also allegedly included at least some components (hardware and software modules) used only to perform the allegedly infringing write methods. *Id.* at 1336. The Federal Circuit held that the inclusion of these *components* with no substantial non-infringing use was sufficient to support a claim of contributory infringement for the entire *device*. *Id.* at 1337. The court reasoned that the defendant would be liable under §271(c) if it imported into or sold within the United States a bare component that had no use other than practicing the patented methods. *Id.* at 1337-38. Therefore, a defendant, such a Sprint, cannot escape liability as a contributory infringer merely by embedding that same component in a larger product with some additional, separable feature before importing and selling it. *Id.*

Under *Ricoh*, the Second Amended Complaint properly pleads contributory infringement because it alleges that the accused Data Enabled Wireless Devices sold by Sprint include components with no substantial infringing uses. For instance, the Second Amended Complaint alleges that the Data Enabled Wireless Devices sold by Sprint necessarily contain software modules specifically designed to be authenticated by and authorized to access Sprint's

provides the single conclusory allegation that [the accused product] has not substantial non-infringing uses."); *Radiation Stabilization Solutions LLC v. Accuray Inc.*, No. 11-cv-7700, 2012 WL 3621256, at *5 (N.D. Ill. Aug. 21, 2012) ("[Complaint] does not explain, even briefly, what the [accused product] does or how it incorporates an infringing component.").

Data Services.  ¶¶ 45, 69, 92 ("Data Enabled Wireless Device include software controlled by Sprint to ensure that the Data Enabled Wireless Device attempts to access Sprint's Wireless Network and Data Services when the Data Enabled Wireless Device is powered-on.").  The Second Amended Complaint further alleges that "Sprint requires that any wireless devices used to access Sprint's Data Services include an associated hardware key/access key and digital identification that may be associated with such wireless device necessary to work with Sprint's Authentication System."  SAC ¶ 32.

The Second Amended Complaint provides other express factual allegations to the same effect—that the accused Data Enabled Wireless Devices include specialized hardware and software designed to only operate in an infringing manner.  For instance, the Second Amended Complaint alleges, and Exhibit H affirms, that Sprint includes software and hardware on its phones to limit access to its network to specific Data Enabled Wireless Devices sold by Sprint and to allow such devices to only to work with Sprint's Wireless Network and Data Services. *See e.g.*, SAC ¶¶ 31, 39; *see also* Section III.A.1.  In contrast, Sprint also sells wireless devices not able to be authenticated and access Sprint's Data Services.  *See* Exhibit H ("Data: Services are not available with all Sprint phones.").  Those devices are not accused of infringement by Prism.

The only plausible inference from these allegations is that the accused Data Enabled Wireless Devices, such as smartphones, sold by Sprint must include specialized components, both hardware and software (e.g., specialized software to automatically connect to Sprint's Data Services and specialized hardware such as the hardware key/access key or other form of hardware-related identity data), for accessing Sprint's Data Services, as compared to an unaccused phone that can only be used to make phone calls and send text messages and <u>cannot</u>

- 13 -

access Sprint's Data Services.  Therefore, the fact that the accused devices have some non-infringing functionality does not defeat Prism's contributory infringement claim based on features that do infringe.

> **(c)** **Sprint's Motion is an Impermissible Motion For Summary Judgment**

Sprint's motion to dismiss is nothing more than an impermissible and thinly veiled motion for summary judgment based on information outside the pleadings (e.g., that *using* the accused Data Enabled Wireless phones to only make voice calls and send text messages does not infringe).  The Second Amended Complaint does not allege that such acts fail to implicate the accused systems and methods, nor does Sprint find any support for its argument in the exhibits to the Second Amended Complaint.  Rather, Sprint would have the Court impermissibly rely upon facts external to the pleadings, and ignore the express factual allegations of the Second Amended Complaint.  *See McAuley*, 500 F.3d at 788 (8th Cir. 2007) (reversing grant of motion to dismiss that was improperly based on information outside the pleadings)*.*

Prism's plausible factual allegations that the Data Enabled Wireless Devices sold by Sprint do not have a substantial non-infringing use are deemed true for purposes of Sprint's Motion.  Sprint's factual arguments to the contrary are misplaced on a motion to dismiss.

> **3.** **Prism Adequately Alleges that Data Enabled Wireless Devices Are a Material Part of the Claimed Inventions**

Sprint next argues that the Second Amended Complaint fails to allege that Data Enabled Wireless Devices constitute a "material part" of the claimed inventions.  Sprint's argument is based solely on the Second Amended Complaint's failure to include the magic words "material part".  Br. p. 7.  However, the Second Amended Complaint with the attached patents-in-suit, contains facts sufficient to support the inference that the accused Wireless Computer Devices are material parts of the claimed inventions.  *See* Section III.A.1.

Prism agrees that, "courts give 'no effect to conclusory allegations of law'" (*Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)), and that "the complaint must contain *facts* which state a claim as a matter of law and must not be conclusory.'" *Plan Pros, Inc. v. Zych*, No. 08-cv-125, 2009 U.S. Dist. LEXIS 28780, at *5 (D. Neb. Mar. 31, 2009) (Strom, J.) (emphasis added) (quoting *Briehl v. G.M. Corp.*, 172 F.3d 623, 627 (8th Cir. 1999)). That is not the situation here.

Prism's Second Amended Complaint asserts facts sufficient to support the inference that the accused Data Enabled Wireless Devices sold by Sprint constitute a material part of the claimed invention. *See* Section III.A.1. The Second Amended Complaint alleges that Sprint sells Data Enabled Wireless Devices (SAC ¶¶ 27-34, 39, 45-46, 63, 68-69, 86, 91-92), and that authentication of these devices to access Sprint's Data Services, underlies the accused acts of infringement (SAC ¶¶ 12-42, 59-66, 83-89). Indeed, the Second Amended Complaint dedicates an entire section to describing the Data Enabled Wireless Computer Device's central role in the accused systems and methods. *See* SAC ¶¶ 30-33. As evident in Section III.A.1 above, the Second Amended Complaint contains numerous other factual allegation to the same effect.[6]

Furthermore, every single independent claim of the patents-in-suit attached to the Second Amended Complaint as Exhibits A , F, G, both asserted and unasserted, references the use of a computer device, such as the accused Data Enabled Wireless Devices sold by Sprint. *See, e.g.*, Exhibit A, Claims 117, 150; Exhibit F, Claims 1, 49; Exhibit G, Claims 1, 38. The

---

[6] The cases cited by Sprint are inapposite as they involve bare bones complaints with few, if any, factual allegations as to the "material part" element, unlike Prism's Second Amended Complaint. *See Radiation*, 2012 WL 3621256, at *5 ("[Complaint] does not explain, even briefly, what the [accused product] does or how it incorporates an infringing component."); *Halton Co. v. Streivor, Inc.*, No. 10-cv-655, 2010 WL 2088203, at *2-3 (N.D. Cal. May 21, 2010) ("complaint merely alleged that defendant 'makes, uses, sells and/or offers to sell ' the accused product").

totality of these factual allegations, coupled with the attached patents-in-suit, is more than sufficient to support the plausible inference that the accused Wireless Computer Devices are material parts of the invention. *See Iqbal*, 556 U.S. at 678.

Therefore, the Second Amended Complaint contains sufficient factual allegations to support the inference that the accused Wireless Computer Devices as a material part of the invention.

**B.      Sprint's Motion For Partial Judgment on the Pleadings is Baseless**

Sprint argues that it is entitled to judgment on the pleadings that it cannot be held liable for indirect infringement of the '288 and '345 patents before April 7, 2012 (the filing date of the original complaint) and cannot be held liable for indirect infringement of the '155 patent before March 1, 2013 (the filing date of the second amended complaint). Sprint's argument is wrong on both the facts and the law.

As a matter of fact, the Second Amended Complaint alleges that Sprint has been indirectly infringing the asserted patents "*at least as early as*" the filing of the respective complaints. *See* SAC ¶¶ 54, 55, 78, 79. The Second Amended Complaint does not, as Sprint argues, allege that Sprint only learned of the patents-in-suit as of the filing date of the respective complaints. As discovery has just begun, Prism does not know when Sprint first learned of the patents-in-suit. And as such knowledge would be in the sole possession of Sprint, Prism has no way of knowing this without discovery. Therefore, such a motion on the pleadings is not appropriate before substantial discovery has been completed.

As a matter of law, Sprint finds no support in any of the cited cases for limiting the damages window based on a pre-discovery motion on the pleadings. Not a single case cited by Sprint is of the same or similar procedural grounds, e.g., on a motion to dismiss or judgment on the pleadings. Rather, every case cited by Sprint in which a court limited damages for

indirect infringement to post-filing infringement, was decided on a motion for summary judgment, well after the patentee was permitted discovery as to the date when the defendant first became aware of the relevant patents. *See CIVIX-DDI, L.L.C. v. Cellco P'ship*, 387 F. Supp. 2d 869, 899 (N.D. Ill. 2005) (on summary judgment after substantial discovery had taken place); *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*, 130 F. Supp. 2d 1152, 1166 (C.D. Cal. 2001) (same). As Prism has yet to be afforded an opportunity to complete such discovery, Sprint's cases do not apply here.

Furthermore, Sprint's arguments that judgment on the pleadings will streamline discovery is a red herring. As Sprint readily admits, its motion for judgment on the pleadings will *only* limit damages for indirect infringement *before* the filing of this suit. Br. pp. 9-10. It will not dispose of the indirect infringement claims. Even if Sprint's motion was granted, Prism is still entitled to pre-filing damages discovery due to Prism's direct infringement claims. Therefore, any effect on the scope of discovery will be minimal.

Accepting all facts alleged in the Second Amended Complaint as true, as must be done for a motion on the pleadings, Sprint is not entitled to judgment on the pleadings because the Complaint contains sufficient factual allegations that Sprint knew of the patents as of a date "at least as early as" the filing of the respective complaints.

In the alternative, if the Court finds Sprint's Motion has merit, Prism asks the Court to grant it leave to further amend the Complaint at some time in the future should Prism learn through discovery that Sprint had knowledge of the patents-in-suit prior to the filing of this action.

## IV.    <u>Conclusion</u>

For the foregoing reasons, Prims respectfully requests that the Court deny Sprint's Motion in its entirety.

Dated: April 10, 2013                    Respectfully submitted,

By:     s/ Matthew W. Olinzock

**Kramer Levin Naftalis & Frankel LLP**    **Koley Jessen P.C., L.L.O.**
Jonathan S. Caplan, Esq. (*pro hac vice*)      Michael C. Cox, Esq. (17588)
Mark A. Baghdassarian, Esq. (*pro hac vice*)   Daniel J. Fischer, Esq. (22272)
Marcus A. Colucci, Esq. (*pro hac vice*)       1125 S. 103rd St., Suite 800
Aaron M. Frankel, Esq. (*pro hac vice*)        Omaha, NE 68124
Matthew W. Olinzock, Esq. (*pro hac vice*)     Tel: (402) 390-9500
Aakash Jariwala, Esq. (*pro hac vice*)         Fax: (402) 390-9005
1177 Avenue of the Americas              mike.cox@koleyjessen.com
New York, NY 10001                       dan.fischer@koleyjessen.com
Tel:  212.715.9100
Fax:  212.715.8000
jcaplan@kramerlevin.com
mbaghdassarian@kramerlevin.com
mcolucci@kramerlevin.com
afrankel@kramerlevin.com
molinzock@kramerlevin.com
ajariwala@kramerlevin.com


**Kramer Levin Naftalis & Frankel LLP**    **Prism Technologies LLC**
Paul Andre, Esq. (*pro hac vice*)              André J. Bahou, Esq.
Lisa Kobialka, Esq. (*pro hac vice*)           Vice President & Chief IP Officer
990 Marsh Road                           878 Arlington Heights Dr., Suite 400
Menlo Park, CA 94025                      Brentwood, TN 37027
Tel: 650.752.1700                        Tel: (615) 712-6580
Fax: 650.752.1810                        Fax: (402) 578-1447
pandre@kramerlevin.com                   aj.bahou@prsmip.com
lkobialka@kramerlevin.com

*Attorney for Plaintiff*
*Prism Technologies LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.


                                                _____s/ Matthew W. Olinzock_____